**Martha Mae Maxwell TIPPETS et al., Appellants (Defendants below),**

v.

**Arthur E. GIFFORD et al., Appellees (Plaintiffs below).**

**No. 4670.**

Supreme Court of Wyoming.

June 10, 1977.

L. R. Garrett, Lovell, and Melvin M. Fillerup, Cody, for appellants.

R. B. Bowman, Lovell, for appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

THOMAS, Justice.

This appeal is taken from a summary judgment entered in favor of the plaintiffs in an action which was brought to quiet the title to a certain tract of land in Big Horn County. While the Complaint encompassed the title to the entire tract, it was the title to the mineral estate which was in issue. No argument here is made that there was any issue of material fact or that the case was not one in which summary judgment was appropriate. Our examination of the record discloses that there is no genuine issue of any material fact within the definition set forth in *Johnson v. Soulis,* Wyo., 542 P.2d 867 (1975). We are in agreement that under the undisputed facts the plaintiffs were entitled to judgment as a matter of law, and we will uphold the decision of the district court.

There was a common source of the titles asserted by the parties to this action. Prior to April 18, 1932, John R. Maxwell owned the fee title to this tract. On April 18, 1932, Maxwell conveyed this tract of land to Nellie C. Dalton by a warranty deed which

contained the following pertinent language referring to the premises conveyed:

"And that they are free from all incumbrances whatsoever. Except a mortgage deed of equal date and record herewith; taxes & drainage. All Mineral, oil and gas rights are hereby reserved."

On the same date a mortgage was given by Nellie C. Dalton and her husband to secure a promissory note for $50. That instrument provided that the Daltons agreed to "pay all taxes and assessments upon the above described premises" until payment of the promissory note. At the time of the conveyance from Maxwell to Dalton the taxes on the property were delinquent for the years 1928, 1929, 1930, and 1931. Subsequently, the taxes for 1932 became delinquent, and on August 31, 1934, the county treasurer sold the tract of land to the county for taxes due and unpaid for the years 1928 to 1932. The statutory period of redemption having expired, on January 4, 1940, the county treasurer issued a tax deed to Big Horn County, and on the same day a Commissioners' Deed was issued to Nellie C. Dalton, both covering the tract of land in question. The plaintiffs below (appellees here) claim their title as the successors of Nellie Dalton. The defendants below (appellants here) claim their title as the successors of John R. Maxwell.

The record discloses that the district court premised the grant of summary judgment upon its conclusion that although the deed from Maxwell to Dalton had the effect of severing the mineral estate as between Maxwell and Dalton, the lien for taxes assessed prior to that deed reached the entire estate owned by Maxwell, both surface and mineral. The district court held that the county had the title to both the surface and minerals which was then conveyed to Dalton, and that the language of the deed did not impose upon Dalton an obligation to pay taxes which were assessed and levied prior to the deed from Maxwell. The thrust of the district court's ruling was that Dalton was not inhibited by any legal precept from acquiring title to the minerals from the county, and that ownership of the mineral estate had vested in Dalton on January 4, 1940. This conclusion made it unnecessary for the district court to consider the effect of a quiet title action brought by Dalton's successors in 1941 upon which they also relied in this action.

In their appeal the appellants assert two theories, each involving sub-issues. The primary contention argued is that the language of the deed made this, in effect, a conveyance "subject to" taxes which already had accrued and were unpaid, and that this language imposed an affirmative obligation upon Nellie Dalton to pay the taxes. Consequently, as a vendee or purchaser, Nellie Dalton could not improve her title to the premises by purchasing the tract of land from the county after the tax foreclosure, but that her purchase of the land should be regarded as a redemption only and for the benefit of Maxwell. The second contention is that in any event the tax sale proceedings were sufficiently defective as to be void resulting in no title being acquired by Dalton. The appellants also assert two other propositions: First, that after severance of a mineral estate adverse possession of the minerals does not follow from possession of the surface; and second, procedural deficiencies in a quiet title suit brought by the appellees in 1941 caused the judgment obtained to be void. Our disposition makes it unnecessary to deal with either of these latter contentions except peripherally.

The primary contention of the appellees fails for two reasons. First, Nellie C. Dalton did not improve her title to the mineral estate by purchasing from Big Horn County after the tax foreclosure. By virtue of the deed from John R. Maxwell, Nellie C. Dalton had no interest in the mineral estate. "* * * After severance, the two estates, owned separately, are held by separate and distinct titles. This has been emphasized in the cases. It has been said that the two estates are 'as distinct as if they constituted two different parcels of land.' *Beulah Coal Mining Co. v. Heihn,* 46 N.D. 646, 655, 180 N.W. 787, 790, quoting from 18 R.C.L. 1184, 1 Am.Jur. 858. * * *" *Ohio Oil Co. v. Wyoming*

*Agency,* 63 Wyo. 187, 204–205, 179 P.2d 773, 778 (1947).

■ The appellants rely upon a well recognized doctrine that a vendee or purchaser cannot improve his title and avoid his obligations to his seller by purchasing the property following a tax lien foreclosure, citing such authorities as *Lamborn v. County Commissioners,* 97 U.S. 181, 24 L.Ed. 926 (1877); *Woods v. Woods,* 216 Ark. 639, 226 S.W.2d 961 (1950); *Finch v. Noble,* 49 Wash. 578, 96 P. 3 (1908); 77 Am.Jur.2d, Vendor and Purchaser, § 350, p. 505 (1975); and others. This rule espoused by the appellants does not pertain to this case, because the effect of the rule announced in *Ohio Oil Co. v. Wyoming Agency, supra,* is that in this instance Nellie C. Dalton acquired no title to any of the mineral estate from John R. Maxwell, and it follows that she did not improve it by purchase of that interest at the tax sale.

■ Secondly, this deed did not impose upon Nellie C. Dalton any obligation to pay the existing tax liens. The appellants contend that the following language in the deed,

"Except a mortgage deed of equal date and record herewith; taxes & drainage * * *."

must be construed as manifesting Maxwell's intention to convey the property subject to the taxes. Appellants then argue that a conveyance subject to the taxes would make Dalton liable for the existing tax liens. If the words "subject to" had been used in the deed rather than the actual language which appellants urge is equivalent to "subject to" those words would not have had had the effect claimed by the appellants. In *Kelly v. Smythe,* 61 Wyo. 209, 157 P.2d 289 (1945) this Court noted a distinction between assuming a debt and purchasing property subject thereto. In a variety of contexts the law is well settled that the use of the words "subject to" relating to a debt, lien, or charge will not have the effect of making a purchaser personally liable for the debt, lien or charge. *Elliott v. Sackett,* 108 U.S. 132, 2 S.Ct. 375, 27 L.Ed. 678 (1883); *Dell Rio Land, Inc. v. Haumont,*

110 Ariz. 7, 514 P.2d 1003 (1973); *Klundt v. Carothers,* 96 Idaho 782, 537 P.2d 62 (1975); *Oswald v. Wolf,* 129 Ill. 200, 21 N.E. 839 (1889); *S. L. Nusbaum & Co. v. Atlantic Virginia Realty Corp.,* 206 Va. 673, 146 S.E.2d 205 (1966). The district court clearly was correct in the conclusion that the Daltons did not assume the liability for the existing tax liens.

■ In asserting the invalidity of the tax sale of this tract of land, appellants suggest in their argument that in any event the foreclosure following severance of the minerals would not be effective with respect to the mineral estate. This is, however, the "different case" alluded to in *Ohio Oil Co. v. Wyoming Agency,* supra, at 63 Wyo. 204, 179 P.2d 778. With respect to those taxes which were assessed against this tract of land prior to the severance of the minerals the tax foreclosure did reach the mineral estate of Maxwell, and that estate did pass to the county and was subject to conveyance by the county. The difference between the two situations is illustrated by *Probasco v. Sikes,* 77 Wyo. 108, 307 P.2d 817 (1957).

■ In advancing the alternative theory that the tax proceedings were not efficacious the appellants rely upon certain claimed defects in a notice to the effect that the tract of land sold for taxes on August 31, 1934 would be the subject of a tax deed to the County of Big Horn unless redemption were effected prior to January 4, 1939. This notice was furnished pursuant to the provisions of Chap. 37, § 1, S.L. of Wyoming, 1937, which amended and re-enacted § 115–2343, W.R.S.1931. Relying upon *Electrolytic Copper Co. v. Rambler Consol. Mines Corp.,* 34 Wyo. 304, 243 P. 126 (1926) and *Mathews v. Nefsy,* 13 Wyo. 458, 81 P. 305 (1905), appellants contend this notice was inadequate, although their argument assumes that it was the notice required by § 115–2335, W.R.S.1931. The section relied upon by the appellants relates to those situations in which an individual purchases at the tax sale whereas in this instance the property was purchased by the county, and § 115–2343 must be the applica-

ble provision. This difference, as well as others, distinguishes *Electrolytic Copper Co. v. Rambler Consol. Mines Corp.*, supra, and *Mathews v. Nefsy, supra.*

The actual statutory language applicable to this situation is that:

"* * * Upon the expiration of four years from the date of sale to the county, it shall be the duty of the county treasurer to make, execute, and deliver to the county a tax deed for any property so sold after having satisfied himself that the county is still owner of said certificate of purchase bid in by the county and that no notice shall be required of the county except a registered letter to the person in whose name the property was assessed to their last known address and to any mortgagee provided their address can be found, such notice to be mailed by the Clerk of the Board of County Commissioners. * * *" Chap. 37, § 1, S.L. of Wyoming, 1937.

The statute does not require any particular form of notice nor does it require any additional action by the county.

Appellants do not present any defects in the foreclosure procedure other than those described above. Since 1941 the statutes of the State of Wyoming have provided that:

"Any person * * * who shall be the grantee under any county commissioner's deed issued by the Board of county commissioners of any county in the State of Wyoming, where the real property described therein shall have been sold to any county on account of delinquent taxes, and all successors in title interest of each such grantee shall be entitled to the possession of the lands described in such deed and such deed shall be prima facie evidence of title to the property described therein, * * *" § 39–138, W.S.

The district court correctly held that on this record the appellees had presented prima facie proof of their title to the mineral estate in the tract of land in issue, and this was not refuted by the appellants.

We hold that the appellees, pursuant to the deed from the county commissioners, obtained title to the mineral estate in the tract of land in issue. We further hold in support of the judgment of the district court that Nellie C. Dalton did not, by obtaining the Commissioners' Deed, improve any title to the mineral estate because she acquired none from John R. Maxwell. In any event Dalton had no obligation to pay the tax liens existing prior to the deed from Maxwell.

The judgment of the district court is affirmed.